IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC
2005 SEP 23  A 11: 32

| | |
|---|---|
| Wallace Johnson, ) | C. A. No. 2:05-0909-GRA-RSC |
| Plaintiff, ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| Jo Anne B. Barnhart, ) Commissioner of Social ) Security, ) | |
| Defendant. ) | |

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Wallace Johnson, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively.

### ADMINISTRATIVE PROCEEDINGS

The plaintiff previously filed an application for disability insurance benefits on April 21, 2000. The claim was denied initially on July 18, 2000, reconsideration on December 27, 2000, and by the administrative law judge's decision on February 12,

1

2002. The Appeals Council denied the claimant's request for review on September 27, 2002.

The plaintiff filed the current applications for disability insurance benefits and supplemental security income benefits on March 20, 2003, alleging that he became unable to work on March 15, 1999, due to back pain. The applications were denied initially and on reconsideration by the Social Security Administration. On October 8, 2003, the plaintiff requested a hearing. The administrative law judge before whom the plaintiff, appeared without counsel, considered the case de novo, and on January 27, 2005, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's findings became the final decision of the Commissioner of Social Security when they were approved by the Appeals Council on March 17, 2005.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2004.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2

3. The claimant's back pain is a "severe" impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity for sedentary work.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform substantially all of the full range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience. Medical-Vocational Rule 201.18, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13. The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

>14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 17-18).

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in

disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See, Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Secretary's findings, and that her conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). However, if there is substantial evidence to support the decision of the Secretary, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## ARGUMENT

By brief, the plaintiff argued that the administrative law judge committed reversible error by "failing to discuss the plaintiff's illiteracy, which was prejudicial because the Grids would dictate disability assuming illiteracy", by failing to have a vocational expert present because of the existence of non-exertional impairments of pain and illiteracy, and by failing to evaluate the plaintiff's pain properly.

## ILLITERACY

The plaintiff argued that he is illiterate within the meaning of the Act and that a finding of illiteracy is dispositive of the case. Under the Social Security Regulations illiteracy means the inability to read or write.[1] The

---

[1] 20 C.F.R. § 404.1564 reads in relevant part:
Your education as a vocational factor.
(a) General. Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.
(b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your

Commissioner considers someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling. 20 C.F.R. § 404.1564(b)(1). However, the fact and amount of formal schooling does not decisively foreclose a finding of illiteracy. 20 C.F.R. § 404.1546(b); <u>Glenn v.</u>

---

formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:
(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education. ...
(6) Information about your education. We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic. We will also consider other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work.

7

Secretary of Health and Human Serv., 814 F.2d 387, 389-390 (7th Cir. 1987) (observing that the quality and standard of American schools precludes an automatic assumption that schooling has made one capable of reading and writing); Heldenbrand v. Chater, 132 F.3d 36 (7th Cir. 1997) (referring to Department of Education data released in 1994 indicating that as many as one quarter of all high school graduates are completely or functionally illiterate). Essentially, the question is "whether the applicant is so deficient in ability to read and write so that he cannot obtain even an unskilled job." 814 F.2d at 391.

The lowest educational level beyond illiterate is a "marginal education." The regulations define "marginal education" as an "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. The Commissioner generally considers that formal schooling at a 6th grade level or less is a marginal education. 20 C.F.R. §§ 404.1564(b)(2) and 416.964(b)(2) (1999).

## DISCUSSION

A review of the record and relevant case law reveals that this case should be reversed and remanded to the Commissioner with instructions to reassign the case to the Greenville, South

Carolina, Division[2] for development of the record and for a full and fair reconsideration of the plaintiff's educational level followed by a continuation of the sequential evaluation process.

Here, the plaintiff was not represented by counsel at the hearing before the administrative law judge, and he testified that he had a tenth grade education, but that he cannot read or write. (Tr. 176). He was forty-eight years old at the time of the administrative law judge's decision so that he had been out of school for over thirty years. The plaintiff testified that he took his driver's test by listening to questions on a cassette recording and answering the questions verbally rather than by reading and writing. (Tr. 176). Further, the record indicates that the plaintiff's sister filled out his applications for benefits and there is no evidence that the plaintiff's prior relevant work as a forklift and crane operator required reading or writing.

Despite the fact that he plaintiff was unrepresented and the administrative law judge found that the plaintiff could not return to his past relevant work and thereby shifting the burden to the Commissioner of proving the plaintiff could perform other work despite his impairments, the administrative law judge did

---

[2] At oral argument in this matter before the undersigned the plaintiff moved the court to order reassignment of the case to the Greenville Division and the defendant indicated that she had no objection to the reassignment.

not develop the record further on the issue of whether the plaintiff was illiterate. It is well-settled that in Supplemental Security Income and Disability Insurance Benefits hearings, the administrative law judge has a "duty 'scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts' in [a] case involving an unrepresented, poorly-educated pro se claimant." Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) (citation omitted); accord Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); Cruz v. Schweiker, 645 F.2d 812, 813 (9th Cir. 1981).

Instead, the administrative law judge noted that the plaintiff had a tenth grade education and found, in a wholly conclusory manner, that the plaintiff had a limited education, in direct contravention of 20 C.F.R. § 404.1564(b). (administrative law judge cannot rely on grade level alone if there is evidence that the plaintiff is illiterate). This was reversible error and the matter should be remanded for a full and fair development of the record and a proper determination of the plaintiff's educational level followed by a continuation of the sequential evaluation process.

## CONCLUSION

Therefore, for the aforementioned reasons, it is recommended that, pursuant to the power of this court to enter a judgment affirming, modifying, or reversing the Commissioner's decision

10

with remand in Social Security actions under sentence four of §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), and the case is remanded to the Commissioner to reassign the case to the Greenville Division for a full and fair assessment of the plaintiff's educational level and continuation of the sequential evaluation process. See, Melkonyan v. Sullivan, 111 S.Ct. 2157 (1991). The Clerk of Court should enter a separate judgment pursuant to Fed. R. Civ. P. 58.

>                         Respectfully Submitted,
>
>                         *[signature: Robert S. Carr]*
>                         Robert S. Carr
>                         United States Magistrate Judge

Charleston, South Carolina

September 23, 2005